UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHARON E. MESSENGER,

                    Plaintiff,

        v.

CONDOLEEZA RICE, Secretary of
State for the United States of
America

                    Defendant.

NO. CV-05-0053-EFS

**ORDER DENYING IN PART AND
HOLDING IN ABEYANCE IN PART
DEFENDANT'S MOTION TO
DISMISS AND ORDERING
SUPPLEMENTAL BRIEFING**

Before the Court, without oral argument, is Defendant Condolezza Rice's (the "Government's") Motion to Dismiss. (Ct. Rec. 9.) Appearing on brief for the Government is Assistant United States Attorney William Beatty, while Julian St. Marie represented Plaintiff Sharon Messenger. After reviewing the submitted materials and relevant authority, the Court is fully informed and rules as follows:

                        **I. Background**

Petitioner Sharon Messenger was born in Mexico on April 19, 1957. (Ct. Rec. 1 at 2.) Ms. Messenger's father, William Phillip Messenger, was a United States citizen, while her mother, Florence Doreen Messenger, was a Canadian citizen. *Id.* Ms. Messenger lived with her parents in Mexico for most of her childhood. *Id.* In April 1975, Ms. Messenger, then eighteen years old, began attending classes at a university in Monterrey,

ORDER ~ 1

Mexico. *Id.* at 3.  During her first semester, Ms. Messenger was notified by the Mexican government that if she did not pledge allegiance to Mexico, she could not continue attending the Monterrey university at the reduced Mexican national rate she was then paying. *Id.*  As a result, on March 3, 1976, Ms. Messenger completed an application for a Certificate of Mexican Nationality and took an oath of allegiance to Mexico. *Id.* Thereafter, on June 4, 1976, Ms. Messenger received a Certificate of Mexican Nationality. *Id.*

On August 19, 1977, while attempting to obtain a United States tourist visa, Ms. Messenger signed an Affidavit of Expatriated Person, in which she certified she had taken an oath of allegiance to Mexico and had received a Certificate of Mexican Nationality. (Ct. Recs. 1 at 3 & 10-2 at 18-19.) The Affidavit of Expatriated Person contained language stating that the above-described acts had been "done with the intention of relinquishing [her] United States citizenship." (Ct. Recs. 1 at 3-4 & Ct. Rec. 10-2 at 18.)  On November 11, 1977, the United States Department of State issued Ms. Messenger a Certificate of Loss of Nationality ("CLN"), which indicated Ms. Messenger had expatriated herself from the United States on June 4, 1976. (Ct. Recs. 1 at 4 & 10-2 at 14-15.)   The CLN also included language explaining the appeal procedures Ms. Messenger could employ to challenge the CLN. (Ct. Rec. 10-2 at 15.)

In 1990, Ms. Messenger asked the United States Department of State to reconsider its issuance of the 1977 CLN.  This request was met by a June 8, 1991 letter from an American Vice Consul, in which Ms. Messenger was informed the Department of State had upheld its issuance of the CLN.

(Ct. Rec. 21-2.)  Then in 2000, Ms. Messenger again asked the Department of State to reconsider the 1977 CLN decision.  This request was also denied by the Department of State in an April 9, 2001, letter that stated: "Unless you can demonstrate by substantial and contemporaneous evidence that your intent was other than that stated in the [Affidavit of Expatriated Person], the Department has no adequate legal grounds to overturn the Certificate of Loss of Nationality." (Ct. Rec. 1 at 15.)

Finally, on February 7, 2005, following yet another request for reconsideration by Ms. Messenger, the Department of State again upheld it issuance of the 1977 CLN, stating that unless Ms. Messenger "can provide new evidence to support another review, [it would] decline future requests." (Ct. Rec. 14.)  As a result, Ms. Messenger petitioned the Court on February 12, 2005, seeking an order revoking the 1977 CLN and declaring Ms. Messenger a United States citizen by virtue of her father's United States citizenship at the time of her birth. (Ct. Rec. 1.)  The Government now moves the Court to dismiss Ms. Messenger's petition. (Ct. Rec. 9.)

## II. Analysis

The Government argues that Ms. Messenger's petition must be dismissed because venue is not proper in the Eastern District of Washington, the petition fails to state a claim upon which relief may be granted, and the Court lacks subject matter jurisdiction.  Each ground for dismissal is addressed in turn as follows:

### A.  Venue

Section 1503(a) of United States Code Title 8 identifies where proper venue lies in § 1503(a) cases.  The statute specifically states

ORDER ~ 3

that § 1503(a) actions "shall be filed in the district court of the United States for the district in which such person resides or claims a residence . . . ." 8 U.S.C. § 1503(a). Because Ms. Messenger has not claimed to permanently reside in the Eastern District of Washington, the Government asserts venue is not proper. In response, Ms. Messenger argues that because she was in the United States on a valid tourist visa and present in Spokane, Washington when she commenced this action, she should be permitted to bring this case in the Eastern District of Washington.

Persons, such as Ms. Messenger, who do not have formal proof of United States citizenship, have limited opportunities to establish permanent residence in the United States. As such, it follows that temporary residence in a judicial district is sufficient to satisfy the venue requirement identified by the Government in § 1503(a). For this reason, because Ms. Messenger temporarily resided in Spokane, Washington when she initiated this action, the Court finds the Eastern District of Washington is the proper venue for Ms. Messenger's § 1503(a) claim and denies the Government's Motion to Dismiss to this extent.

**B. Subject Matter Jurisdiction & Failure to State a Claim**

The Government moves to dismiss Ms. Messenger's claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and the failure to state a claim on which relief may be granted. Under Rule 12(b), civil cases must be dismissed if the court hearing the matter does not have subject matter jurisdiction or if the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). When considering Rule 12(b)(1) and 12(b)(6) motions,

ORDER ~ 4

courts must accept all complaint allegations and reasonable inferences drawn therefrom to be true. *Whisnat v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

Section 1503(a) of United States Code Title 8 provides:

> If any person who is within the Untied States claims a right or privilege as a national of the United States and is denied such right or privilege by any department . . . upon the ground that he is not a national of the United States . . . such person may institute an action . . . against the head of such department . . . for a judgment declaring him to be a national of the United States.

However, such actions must "be instituted [ ] within five years after the final administrative denial of such right or privilege. . . ." 8 U.S.C. § 1503(a).  Thus, this Court has subject matter jurisdiction over the instant action only if (1) Ms. Messenger claims a right or privilege as a national of the United States, (2) such right or privilege was denied by a department on the ground Ms. Messenger was not believed to be a national of the United States, (3) this action was instituted against the head of the department that denied Ms. Messenger's claimed right or privilege, (4) this action was commenced within § 1503(a)'s five year statute of limitation.

Although the Government asserts Ms. Messenger's action should be dismissed for both lack of subject matter jurisdiction and based on statute of limitation grounds, it confines its arguments to issues of timing.  For this reason, the Court first addresses whether Ms. Messenger's claim is time-barred.

//

//

//

ORDER ~ 5

### A. CLNs & § 1503(a)'s Statute of Limitation

Section 1501 of United States Code Title 8 sets forth the procedures by which CLNs are to be issued by the Department of State.[1]  In 1994, the following language was added to § 1501:

> Approval by the Secretary of State of a [CLN] shall constitute a final administrative determination of loss of United States nationality under this chapter, subject to such procedures for administrative appeal as the Secretary may prescribe by regulation, and also shall constitute a denial of a right or privilege of United States nationality for purposes of section 1503 of this title.

Pub. L. No. 103-416, 108 Stat. 4309 (codified as amended at 8 U.S.C. § 1501) (the "1994 amendment").  Prior to the 1994 amendment, the United States Code was silent with regard to the relationship between CLNs and the aforementioned § 1503(a) jurisdictional requirements and statute of limitation.

The Government urges the Court to find the 1994 amendment was merely a clarification of the § 1501's pre-1994 amendment language and meaning. If this is true, Ms. Messenger's 1977 CLN would constitute both a final administrative determination of Ms. Messenger's loss of United States nationality and a denial of a right of privilege under § 1503(a).  As a

---

[1] Section 1501 generally prescribes that when a diplomatic or consular officer has reason to believe a person while in a foreign state has lost his United States nationality he shall certify the facts upon which such belief is based to the Department of State.  If the diplomatic or consular officer's report is approved by the Secretary of State, the diplomatic or consular office in which the report was made shall forward a copy of the certification, or CLN, to the person it relates to. 8 U.S.C. § 1501.

ORDER ~ 6

consequence, the Government argues Ms. Messenger's statute of limitation for filing suit under § 1503(a) ran out in 1982, five years after the 1977 CLN was issued.  Meanwhile, in opposition, Ms. Messenger claims the 1994 amendment added new terms to § 1501 and should not be considered a clarification of existing law.  For this reason, Ms. Messenger argues the 1977 CLN was not a final administrative denial under § 1503(a) and that her five-year statute of limitations did not begin running until a later date.

### 1. Foreign Circuit Precedent

In *Benksy v. Powell*, the Seventh Circuit concluded the 1994 amendment did not clarify existing law, but instead added new meaning to § 1501. 391 F.3d 894 (7th Cir. 2004).  The plaintiff in *Bensky* was a native-born United States citizen who signed an Oath of Renunciation of Nationality in 1964 as part of a plan to join the Israeli army. *Id.* at 894.  Following the plaintiff's renunciation, a CLN was approved by the Secretary of State. *Id.*  In 1985, the plaintiff filed an appeal with the Board of Appellate Review challenging the Department of State's 1964 issuance of his CLN, arguing his renunciation of nationality had been involuntary. *Id.*  The Board of Appellate Review concluded Defendant's 1985 appeal was untimely and barred it. *Id.* at 895.  Thereafter, in 1998, the plaintiff requested a United States passport from the Department of State. *Id.* at 896.  The Department of State refused the plaintiff's request on the ground the plaintiff was not a United States citizen. *Id.* Within five years of the Department of State's denial of a passport, the plaintiff filed suit under § 1503(a), seeking a declaration he was a United States citizen despite the 1964 CLN. *Id.*

ORDER ~ 7

In considering the *Bensky* plaintiff's appeal, the Seventh Circuit focused on whether the issuance of a CLN under the pre-amended version of § 1501 constituted a "final administrative *denial*" of a right or privilege for the purpose of commencing § 1503(a)'s five year statute of limitation.[2] *Id.* at 897. The Seventh Circuit ultimately sided with the plaintiff on this point by concluding the 1994 amendment changed § 1503(a)'s statute of limitation accrual date in instances where a CLN is issued without objection by the person it relates to, as was the case for the *Bensky* plaintiff. *Id.* The Seventh Circuit explained that because the plaintiff had essentially *requested* the CLN by asking to renounce his United States citizenship, the issuance of the CLN could not be considered a *denial* of a right or privilege as required under § 1503(a) to bring suit. *Id.* 897-98.

The Seventh Circuit acknowledged that its "interpretation of section 1501's tangled history may open the door to belated suits by persons who lost their U.S. citizenship before the 1994 amendment became effective," but noted that the doctrine of laches "would probably close the door to many such suits." *Id.*

The Seventh Circuit's ruling in *Bensky* is consistent with the Third Circuit's opinion in *Haig v. Whitehead*, 794 F.2d 115 (3d Cir. 1986). In *Haig*, the Third Circuit was similarly called upon to determine whether the issuance of a CLN under § 1501 commences § 1503(a)'s statute of limitations. *Id.* However, the court in *Haig* considered the issue prior

_____

[2] It was undisputed in *Bensky* that under post-amended § 1501, § 1503(a)'s five year statute of limitation 's commenced upon the Secretary of State's approval of a CLN, an issue contested in the instant motion.

ORDER ~ 8

to the 1994 amendment.   The plaintiff in *Haig* was born in the United States in 1943. *Id.* at 115.   In 1965, the plaintiff renounced his United States citizenship while in Tokyo, Japan. *Id.* at 116.   That same year, the Secretary of State approved a CLN as a result of the plaintiff's renunciation. *Id.*   In 1979, the plaintiff applied for a United States passport. *Id.*   The plaintiff's request was denied in 1980 on the basis he was not a national of the United States. *Id.*   Then, in 1981, the plaintiff filed suit under § 1503(a) seeking a declaration of United States citizenship. *Id.*   The plaintiff argued that the 1980 denial of his passport request constituted a final administrative denial of a right or privilege under § 1503(a). *Id.*   Meanwhile, the Government asserted the 1965 CLN was a § 1503(a) final administrative denial and that the plaintiff's claim was time-barred because it was not brought within five years of the 1965 CLN's approval. *Id.*

The Third Circuit concluded the approval of the CLN did not commence the plaintiff's § 1503(a)'s statute of limitation because the plaintiff surrendered his United States citizenship and was not *denied* any right or privilege as required under § 1503(a) to file suit. *Id.* at 118. *Accord Ferretti v. Dulles*, 246 F.2d 544 (2d Cir. 1957) (notifying someone that she has become expatriated by virtue of her voting in another country is not a denial of a right or privilege under § 1503(a)); *see also Maldonado-Sanchez v. Shultz*, 706 F.Supp. 54 (D.D.C. 1989) (the issuance of a CLN is not the denial of a right under § 1503(a)).

The decisions in *Bensky*, *Haig*, *Ferretti*, and *Maldonado-Sanchez,* are sharply contrasted by the Eleventh Circuit's opinion in *Heuer v. Secretary of State*, 20 F.3d 424 (11th Cir. 1994).   In *Heuer*, the Eleventh Circuit also considered whether the issuance of a CLN under pre-1994

ORDER ~ 9

amended § 1501 triggered § 1503(a) statute of limitation. *Id.* The plaintiff in *Heuer* was born in the United States to Venezuelan parents in 1956. *Id.* at 425. In 1977, after succumbing to family pressure, the plaintiff renounced his United States citizenship. *Id.* As a result, a CLN was approved by the Secretary of State in 1978. *Id.* Then, in 1988, after having a change of heart concerning his United State nationality, the plaintiff applied for a United States passport, which was denied by the Passport Agency in 1989 upon a determination the plaintiff was not a United States citizen. *Id.* The Passport Agency's decision was affirmed by the Board of Appellate Review in 1991. *Id.* Thereafter, in 1992, the plaintiff filed suit against the Secretary of State for a judicial declaration of United States citizenship under § 1503(a), alleging his 1977 renunciation was the product of familial coercion and duress. *Id.*

The Eleventh Circuit court in *Heuer* expressly rejected its sister circuit's reasoning *Haig*, stating its belief *Haig* was wrongly decided. *Id.* at 427. In doing so, the court in *Heuer* conclusively declared CLNs are § 1503(a) "denials" because they deny their recipients "the status to be recognized as a United States national, and all the rights and claims thereto." *Id.* (citation omitted).

## 2. Ninth Circuit Precedent

Although the Ninth Circuit has not addressed the issue of whether the 1994 amendment was intended to clarify the affect CLNs have under § 1503(a) or add new meaning to § 1501, the Ninth Circuit has spoken in general terms on this interpretive problem. *See ABKCO Music, Inc. V. Lavere, 217 F.3d 684* (9th Cir. 2000)*; Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259 (9th Cir. 1997).

In *ABKCO Music*, the Ninth Circuit pointed to several sources courts may draw from when determining whether Congress intended an a statutory amendment to clarify, as opposed to change, an existing statute's meaning. 217 F.3d at 684.  First, the court emphasized that "a decision by [ ] Congress to intervene by expressly clarifying the meaning of [the statute] is worthy of real deference." *Id.* at 690 (quoting *Beverly Cmty. Hosp. Ass'n*, 132 F.3d at 1266).  Therefore, courts should "honor Congress' 'clarification' label and accept [the new] provisions as a statement of what [the statute] has meant all along." *Id.*

Next, the Ninth Circuit emphasized that statutory amendments made in the face of differing court opinions as to the meaning of pre-amendment statutory language typically clarify, rather than change the law. *Id.* at 691 (*citing Callejas v. McMachon*, 750 F.2d 729, 731 (9ᵗʰ Cir. 4th Cir.) ("[A] dispute or ambiguity, such as a split in the circuits, is an indication that a subsequent amendment is intended to clarify, rather than change, the existing law.") (citations omitted in part).  Finally, courts should consider whether a Congressional amendment is consistent with the applicable administrative agency's pre-amendment interpretation of the statutory language that was amended. *Id.* at 690.  Consistency between the amended language and the agency's prior view supports a finding of clarification, rather than change in law. *Id.*

### 3. Analysis

In this case, the Government urges the Court to adopt the Eleventh Circuit's position in *Heuer* by finding the Secretary of State's adoption of CLNs under § 1501 has always triggered the accrual of § 1503(a)'s five year statute of limitation.  In support of this position, the Government explains that § 1501 was "unclear" as to whether CLNs commence the §

1503(a) statute of limitation and that Congress intended to rectify this problem by enacting the Immigration and Nationality Technical Corrections Act of 1994, which contained the 1994 amendment.

The Government points to Senator Kennedy's Congressional Record comment that the "amendment would make clear that issuance of a Certificate of Loss of Nationality is a final administrative action subject to judicial review[,]" 139 CONG. REC. S8554 (daily ed. July 1, 1993) (statement of Sen. Kennedy), to support its claim Congress intend the 1994 amendment to clarify § 1501 rather than change its meaning.

The Court is not persuaded by the authority cited by the Government in support of this issue. First, had Congress intended the 1994 amendment to clarify § 1501, it could have stated such a desire in the act and been afforded great deference on this point under *Beverly Cmty. Hosp. Ass'n*, but Congress did not do so and no such deference is afforded. Second, the Congressional Record statement made by Senator Kennedy and relied on by the Government is equally as ambiguous as the pre-1994 version of § 1501. Senator Kennedy did not explain the 1994 amendment was intended to clarify the statute or rectify judicial misinterpretations of § 1501's meaning. Instead, the statement merely expresses a belief that § 1501's amended language would "make clear" that the issuance of a CLN may serve as the impetus of a § 1503(a) action. Whether this is a change in the law or a simply a clarification of Congress' prior intent cannot be determined from this limited statement.

The Court also notes that much of the debate on § 1501's 1994 amendment, including Senator Kennedy's comment, occurred prior to the Eleventh Circuit's issuance of the opinion in *Heuer*. *See generally* H.R. REP. NO. 103-387 (1994). Consequently, there is little support for the

ORDER ~ 12

proposition that Congress intended the 1994 amendment to clarify § 1501 in light of a circuit split.   In fact, almost all existing judicial opinions on this issue prior to the 1994 amendment are counter to language adopted by Congress. *See e.g. Haig*, 794 F.2d at 115; *Maldonado-Sanchez,* 706 F.Supp. at 54*; cf. Heuer*, 20 F.3d at 424.   Thus, there is little reason to believe Congress was motivated to clarify § 1501's meaning to cure an interpretive disagreement between the circuits.

Not finding the Government's position to be supported by the interpretive factors espoused in *ABKCO Music*, the Court turns to the other opinions described above.   To begin, the Court acknowledges that the afore-described opinions are at odds with each other.   On one side are *Bensky*, *Haig*, and *Maldonado-Sanchez*, which hold that CLNs adopted prior to the 1994 amendment typically have no affect on a claimant's § 1503(a) statute of limitation.   Whereas, the court in *Heuer* arrived at the opposite conclusion.   After considering the various rationales provided in these rulings, the Court finds the *Bensky*, *Haig*, and *Maldonado-Sanchez* line of cases more persuasive and concludes *Heuer*, which is at odds with all other courts on this issue, is aberrational. Accordingly, in agreement with *Bensky*, *Haig*, and *Maldonado-Sanchez*, the Court concludes that prior to the 1994 amendment, the adoption of a CLN was not intended to constitute a denial of a right or privilege of United States nationality under § 1503(a).   As such, because the 1994 amendment added new meaning to the relationship between CLNs and § 1503(a), the 1994 amendment did not simply clarify § 1501's preexisting terms.

Because the Court concludes the 1994 amendment was not a clarification of § 1501, the significance of Ms. Messenger's 1977 CLN is controlled by § 1501's pre-1994 amendment meaning.   For this reason, the

ORDER ~ 13

Court holds the Secretary of State's adoption of the 1977 CLN did not commence Ms. Messenger's § 1503(a) statute of limitation and the Court denies the Government's Motion to Dismiss to this extent. Next, the Court considers whether it has subject matter jurisdiction over the claim raised in Ms. Messenger's petition.[3]

### B. Subject Matter Jurisdiction

As noted above, claimants may bring suit under § 1503(a) only if they meet the requirements outlined in the statute. Aside from having to file within the required statute of limitation period as was touched upon above, § 1503(a) claimants must (1) claim a right or privilege as a national of the United States and (2) have had that right or privilege denied on the belief the claimant was not a national of the United States. 8 U.S.C. § 1503(a).

Although Ms. Messenger does not believe the Secretary of State's 1977 adoption of her CLN was a denial of a right or privilege of United States nationality under § 1503(a), her briefing implies a belief that

---

[3] Although this issue is only peripherally raised by the parties in their briefing, the Court is obligated to consider explore the basis for its subject matter jurisdiction in all cases and dismiss those for which it does not have jurisdiction. FED. R. CIV. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884) (federal courts should raise the question of subject matter jurisdiction *sua sponte* if necessary).

ORDER ~ 14

the Department of State's refusals to revoke its issuance of the CLN in 2001 and 2005 *were denials* of a right or privilege under § 1503(a). Similarly, the Government implies that if the 1977 CLN was not an denial of a right or privilege for purposes of commencing § 1503(a)'s statute of limitation, then the Department of State's refusal to revoke the 1977 CLN in 1991, at Ms. Messenger's request, was a requisite denial.

A denial of a right or privilege under § 1503(a) requires an affirmative act that prevents a person from enjoying some aspect of United States nationality.  Examples of such acts include the denial of a passport, a social security card, and the right to vote.  In this action, the Court is uncertain whether Ms. Messenger has alleged a denial of a right or privilege of United States nationality.  Accordingly, because the denial of a right or privilege of United States nationality is a prerequisite to any § 1503(a) suit, the Court is concerned it lacks subject matter jurisdiction.

To ensure the Court is fully informed on this issue, the parties are ordered to file memoranda addressing the issue of subject matter jurisdiction no later than February 21, 2006, not to exceed twelve (12) pages.  The parties are to discuss whether Ms. Messenger has alleged a denial of a right or privilege under § 1503(a) and explain why the Department of State's 1991, 2001, and/or 2005 refusals to revoke the 1977 CLN either satisfy or fail to satisfy the "denial of a right or privilege" element, or whether some other governmental act serves as the basis of Ms. Messenger's denial under § 1503(a).  Additionally, in connection with any action the parties assert as § 1503(a) denial, they should explain why that action constitutes a "final administrative denial," and address whether Ms. Messenger must exhaust any

ORDER ~ 15

administrative remedies prior to bringing a § 1503(a) claim based on that action.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Defendant's Motion to Dismiss **(Ct. Rec. 9)** is **DENIED IN PART** (the adoption of the 1977 CLN triggers § 1503(a)'s statute of limitation) and **HELD IN ABEYANCE IN PART** (the remainder of the motion).

2. The parties shall submit supplemental memoranda, not exceeding twelve (12) pages, as directed above **no later than February 21, 2006.**

**IT IS SO ORDERED.**   The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this   31st   day of January, 2006.


                    s/ Edward F. Shea
                  EDWARD F. SHEA
            United States District Judge

Q:\Civil\2005\0053.mot.to.dismiss.frm

ORDER ~ 16