UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHARON E. MESSENGER,<br><br>             Plaintiff,<br><br>  v.<br><br>CONDOLEEZA RICE, Secretary of State for the United States of America<br><br>             Defendant. | NO. CV-05-0053-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING PLAINTIFF'S PETITION FOR DECLARATION OF UNITED STATES NATIONALITY FOR LACK OF SUBJECT MATTER JURISDICTION** |

    Before the Court, without oral argument, is Defendant Condolezza Rice's (the "Government's") Motion to Dismiss. (Ct. Rec. 9.) Assistant United States Attorney Pamela DeRusha appears on brief for the Government and Julian St. Marie for Plaintiff Sharon Messenger. This case arises from Ms. Messenger's filing of her Petition for Declaration of United States Nationality ("Petition"), in which she asks the Court to revoke the Certificate of Loss of Nationality ("CLN") approved by the Department of State on November 11, 1977, and declare her to be a United States national. (Ct. Rec. 1.)

    On July 29, 2005, the Government filed a Motion to Dismiss asking the Court to dismiss Ms. Messenger's Petition for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. (Ct. Rec. 9.) October 20, 2005, after initially considering the

ORDER ~ 1

Government's Motion to Dismiss and the pleadings filed in connection therewith, the Court ordered the parties to file supplemental memoranda in support of their respective positions concerning several issues relevant to the Government's motion. (Ct. Rec. 20.) The parties supplemental memoranda were filed with the Court in early November 2005. (Ct. Recs. 21 & 25.)

On January 31, 2006, after reviewing the parties' original and supplemental pleadings, the Court issued an Order Denying in Part and Holding in Abeyance in Part Defendant's Motion to Dismiss. (Ct. Rec. 29.) In that Order, the Court denied the Government's argument that the issuance of the 1977 CLN triggered Ms. Messenger's five-year statute of limitations to bring the instant suit under 8 U.S.C. § 1503(a). *Id.* Also in that Order, the Court expressed its concern that subject-matter jurisdiction may be lacking and ordered the parties to file a second round of supplemental briefing on several issues relating to whether § 1503(a)'s jurisdictional requirements have been met. *Id.* The parties' filed their second supplemental memoranda with the Court on February 21, 2006. (Ct. Recs. 31 & 32.)

After reviewing the second set of supplemental memoranda, all other materials submitted in this case, and the relevant authority, the Court is fully informed and hereby dismisses Ms. Messenger's Petition for lack of subject matter jurisdiction.

## I. Background

Petitioner Sharon Messenger was born in Mexico on April 19, 1957. (Ct. Rec. 1 at 2.) Ms. Messenger's father, William Phillip Messenger, was a United States citizen, while her mother, Florence Doreen Messenger,

was a Canadian citizen. *Id.*  Ms. Messenger lived with her parents in Mexico for most of her childhood. *Id.*  In April 1975, Ms. Messenger, then eighteen years old, began attending classes at a university in Monterrey, Mexico. *Id.* at 3.  During her first semester, Ms. Messenger was notified by the Mexican government that if she did not pledge allegiance to Mexico, she could not continue attending the Monterrey university at the reduced Mexican national rate she was then paying. *Id.*  As a result, on March 3, 1976, Ms. Messenger completed an application for a Certificate of Mexican Nationality and took an oath of allegiance to Mexico. *Id.* Thereafter, on June 4, 1976, Ms. Messenger received a Certificate of Mexican Nationality. *Id.*

On August 19, 1977, while attempting to obtain a United States tourist visa, Ms. Messenger signed an Affidavit of Expatriated Person, in which she certified she had taken an oath of allegiance to Mexico and had received a Certificate of Mexican Nationality. (Ct. Recs. 1 at 3 & 10-2 at 18-19.)  Unbeknownst to Ms. Messenger, the Affidavit of Expatriated Person contained language stating that the above-described acts had been "done with the intention of relinquishing [her] United States citizenship." (Ct. Recs. 1 at 3-4 & Ct. Rec. 10-2 at 18.)  On November 11, 1977, the United States Department of State issued Ms. Messenger a CLN, which indicated Ms. Messenger had expatriated herself from the United States on June 4, 1976. (Ct. Recs. 1 at 4 & 10-2 at 14-15.)  The CLN also included language explaining the appeal procedures Ms. Messenger could employ to challenge the CLN. (Ct. Rec. 10-2 at 15.)

In 1990, Ms. Messenger asked the United States Department of State to reconsider its issuance of the 1977 CLN.  This request was met by a

ORDER ~ 3

June 8, 1991, letter from an American Vice Consul, in which Ms. Messenger was informed the Department of State had upheld its issuance of the CLN. (Ct. Rec. 21-2.)  Then in 2000, Ms. Messenger again asked the Department of State to reconsider the 1977 CLN decision.  This request was also denied by the Department of State in an April 9, 2001, letter that stated: "Unless you can demonstrate by substantial and contemporaneous evidence that your intent was other than that stated in the [Affidavit of Expatriated Person], the Department has no adequate legal grounds to overturn the Certificate of Loss of Nationality." (Ct. Rec. 1 at 15.)

Finally, on February 7, 2005, following yet another request for reconsideration by Ms. Messenger, the Department of State again upheld it issuance of the 1977 CLN, stating that unless Ms. Messenger "can provide new evidence to support another review, [it would] decline future requests." (Ct. Rec. 14.)  As a result, Ms. Messenger petitioned the Court on February 12, 2005, seeking an order revoking the 1977 CLN and declaring Ms. Messenger a United States citizen by virtue of her father's United States citizenship at the time of her birth. (Ct. Rec. 1.)

## II. Analysis

Section 1503(a) of United States Code Title 8 provides:

> If any person who is within the Untied States claims a right or privilege as a national of the United States and is denied such right or privilege by any department . . . upon the ground that he is not a national of the United States . . . such person may institute an action . . . against the head of such department . . . for a judgment declaring him to be a national of the United States.

However, such actions must "be instituted [ ] within five years after the final administrative denial of such right or privilege. . . ." 8 U.S.C. § 1503(a).  Thus, this Court has subject matter jurisdiction over the instant action only if (1) Ms. Messenger claimed a right or privilege as

ORDER ~ 4

a national of the United States, (2) such right or privilege was denied by a department on the ground Ms. Messenger was a national of the United States, (3) a court action was brought against the head of the department that had denied Ms. Messenger's claimed right or privilege, and (4) the action was commenced within five years of the final administrative denial of such right or privilege.

In support of her belief the Court has subject matter jurisdiction to consider the instant action, Ms. Messenger argues that the Department of State's refusal in 2005 to revoke its issuance of the CLN constituted a final administrative denial of a right or privilege of United States nationality and that her claim is timely because it was filed within five years of the alleged 2005 final administrative denial.  In contrast, without taking a firm position of whether Ms. Messenger has ever been denied a right or privilege of United States nationality, the Government asserts that subject matter jurisdiction does not exist because no event involving Ms. Messenger constitutes a final administrative denial of a right or privilege of United States nationality.  Therefore, according to the Government, because the fourth jurisdictional requirement has not been satisfied, this case must be dismissed for lack of subject matter jurisdiction.  In making this argument, the Government focuses on the discretionary nature of the Department of State's right to vacate CLNs under 22 C.F.R. § 7.2 and how it may repeatedly review its CLN decisions whenever and as frequently as it likes.  Thus, the Government argues that because its CLN decisions may be repeatedly reviewed by the Department of State, there is no basis for concluding a refusal to revoke a CLN is a *final* denial, let alone a *final administrative denial*.  The Court recognizes the merit of this argument.  However, because, as explained

ORDER ~ 5

below, the Court concludes that a refusal to revoke a CLN does not constitute a *denial* of right or privilege under § 1503(a), the Court need not decide whether such refusals constitute *final administrative denials* under § 1503(a).

In this case, the only occurrences that could be construed as a denial of a right or privilege of United States nationality are the Department of State's 1977 issuance of Ms. Messenger's CLN and the 1991, 2001, and 2002, Department of State refusals to revoke the 1977 CLN. Because the Court has already determined the 1977 CLN issuance does not constitute a denial of a right or privilege of United States nationality under § 1503(a) (*see* Ct. Rec. 29), the Court need now only consider whether one or more of the three above-mentioned refusals constitutes such a denial under § 1503(a).

The Court's consideration of whether any of the three refusals constitute a § 1503(a) denial begins with the observation that no evidence in the record supports a finding that any of the refusals have prevented or limited Ms. Messenger from going anywhere or doing anything in the United States. Furthermore, nothing in the record indicates that since the refusals were made, that Ms. Messenger has been denied any public benefit or privilege reserved to United States nationals. Next, the Court observes that nothing contained in any of the refusals expressly or impliedly indicates Ms. Messenger was being restricted in any way. Instead, the refusals, like the 1977 CLN, simply appear to be the Department of State's opinion of whether Ms. Messenger expatriated herself and should not be confused as declarations of nationality or of what rights Ms. Messenger is or is not entitled to enjoy. (Ct. Recs. 21-2, 10-2 at 13, & 14.)  As is evident from Congress' enactment of §

ORDER ~ 6

1503(a), determinations regarding nationality and the rights stemming therefrom are reserved to the courts.

In general, the Court believes a *denial* of a right or privilege of United States nationality requires an affirmative act that attempts to prevent or restrict a person from enjoying some right or privilege guaranteed to United States nationals. Examples of such acts include the denial of a passport, a social security card, and the right to vote. As noted above, the record contains no evidence that the Department of State, through its refusals to revoke the 1977 CLN, prevented or attempted to prevent Ms. Messenger from enjoying any right or privilege guaranteed to United States nationals. For this reason, the Court concludes none of the three refusals constitute a denial under § 1503(a). Therefore, because the denial of a right or privilege of United States nationality is a prerequisite to any § 1503(a) suit and each of the events relied upon by Ms. Messenger as her requisite denial have been found to not constitute a denial of a right or privilege of United States nationality under § 1503(a), the Court concludes it lacks subject matter jurisdiction and hereby dismisses Ms. Messenger's case.

The Court expresses no opinion on the potential right of Ms. Messenger - should she be denied a right or privilege of United States nationality - to file a new case under § 1503(a) after complying with its requirements.

Accordingly, **IT IS HEREBY ORDERED**: The remainder of Defendant's Motion to Dismiss **(Ct. Rec. 9)** is **GRANTED**. Plaintiff's Petition for Declaration of United States Nationality **(Ct. Rec. 1)** is **DISMISSED** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.** The District Court Executive is directed to:

ORDER ~ 7

(A) Enter this Order;

(B) Enter judgment in favor of the Government;

(C) Provide copies of the Judgment to counsel; and

(D) Close this file.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this ___31st___ day of March, 2006.

                                         s/ Edward F. Shea
                                         EDWARD F. SHEA
                                   United States District Judge

Q:\Civil\2005\0053.dismiss.petition.subject.matter.jd.frm

ORDER ~ 8